UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-22535-CIV-ALTONAGA/Reid

YAIMA VEGA,

    Plaintiff,
v.

CITY OF SWEETWATER,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, City of Sweetwater's Motion to Dismiss Plaintiff's Complaint [ECF No. 20], filed on July 10, 2025. Plaintiff, Yaima Vega filed a Response in Opposition [ECF No. 23], to which Defendant filed a Reply [ECF No. 24]. The Court has carefully considered the Complaint [ECF No. 1], the parties' written submissions, the record, and applicable law.

### I. BACKGROUND

This civil-rights action arises from Defendant's termination of Plaintiff's employment on February 28, 2022. (*See* Compl. ¶¶ 7, 27). Plaintiff first worked for Defendant from January 2013 until December 13, 2013, during which time she was subjected to unwanted sexual harassment by then-Mayor Jose M. Diaz and harassment by his Chief of Staff, Robert Herrada. (*See id.* ¶¶ 7–8). On December 6, 2013, she reported the conduct to Defendant's Human Resources Manager; a week later, Defendant terminated her employment. (*See id.* ¶¶ 9–10).

In 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), naming Diaz and Herrada as responsible for the harassment and retaliation. (*See id.* ¶¶ 11–12). After investigating, the EEOC found reasonable cause to believe

Plaintiff had been sexually harassed and retaliated against. (*See id.* ¶ 13). The parties then entered into a conciliation agreement under which Defendant paid Plaintiff $16,636 in back wages and $50,000 in compensatory damages, committed to train employees on gender discrimination and retaliation, and agreed not to retaliate against Plaintiff for her protected activity. (*See id.* ¶¶ 14–17). Then-Mayor Orlando Lopez signed the agreement on behalf of Defendant. (*See id.* ¶ 18).

Following Plaintiff's 2013 termination, Defendant demoted Herrada to Director of Operations and Senior Center Director. (*See id.* ¶ 20). Two years later, then-Mayor Lopez rehired Plaintiff as Constituent Services Supervisor. (*See id.* ¶ 21). Plaintiff excelled in the role, and her strong performance earned her successive promotions — first to Executive Assistant to the Mayor, and in 2018, to Senior Advisor to the Mayor. (*See id.* ¶ 22).

In December 2021, Herrada returned to the role of Chief of Staff — this time under then-Mayor Lopez — replacing Ralph Ventura, who was transitioning to City Attorney. (*See id.* ¶¶ 23–24). During the transition, Plaintiff complained to Ventura about Herrada and told Ventura she feared Herrada would retaliate against her. (*See id.* ¶ 24). She reiterated those concerns after Ventura's formal appointment. (*See id.*). Around the same time, Plaintiff also voiced her fears to Lorena Uribe, Defendant's Human Resources ("HR") Director, and requested a transfer to avoid contact with Herrada; Plaintiff proposed continuing solely as Constituent Services Supervisor. (*See id.* ¶¶ 25–26). Uribe responded that if that arrangement was not feasible, given her professional certification, Plaintiff could instead be placed in the HR department. (*See id.* ¶ 26).

On February 28, 2022, two months after Herrada's return, Defendant terminated Plaintiff's employment at Herrada's direction. (*See id.* ¶ 27). Although several employees urged that Plaintiff be transferred instead, Herrada insisted she be terminated. (*See id.* ¶ 28). Defendant justified the termination by citing Plaintiff's at-will status (*see id.* ¶ 29), but Plaintiff contends it

was in retaliation for her protected activity — her 2014 EEOC charge and subsequent complaints about Herrada's return.  (*See id.* ¶ 30).  Plaintiff further insists that even if the ultimate decisionmaker lacked animus, the decision was tainted by Herrada's retaliatory intent, rendering Defendant liable as the conduit of his bias.  (*See id.* ¶¶ 31–32).

Plaintiff brings two claims: retaliation under Title VII ("Count I") and retaliation under the Florida Civil Rights Act ("FCRA") ("Count II").  (*See id.* ¶¶ 35–47).  Defendant seeks dismissal of the Complaint for failure to state claims for relief.  (*See generally* Mot.; Reply).  Defendant also asserts that the Complaint is an impermissible shotgun pleading.  (*See* Mot. 7).  Defendant's arguments fail to persuade.

## II.  LEGAL STANDARDS

***Motion to Dismiss.***  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While plausibility "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555).  Unsurprisingly, then, a pleading that offers only labels, conclusions, or a formulaic recitation of the elements of a cause of action will not suffice.  *See Twombly*, 550 U.S. at 555 (citation omitted).  In the end, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds*

3

by *Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court construes the complaint "in a light most favorable to the plaintiff" and takes its factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

**Shotgun Pleadings.** Under Federal Rule of Civil Procedure 8(a)(2), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Id.* (alterations added). The rule is designed to "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *LaCroix v. W. Dist. of Ky.*, 627 F. App'x 816, 818 (11th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). A complaint must therefore allege more than vague assertions or conclusory labels; it must set forth enough factual matter, accepted as true, to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

Complaints that violate Rule 8(a)(2) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). "[A] typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (alteration added). Such a structure makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (citation omitted). The Eleventh Circuit routinely condemns shotgun pleadings. *See Real Estate Mortg. Network, Inc. v. Cadrecha*, No. 11-cv-474, 2011 WL 2881928, at *2 (M.D. Fla. July 19, 2011) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)).

### III.  DISCUSSION

Defendant argues that Plaintiff fails to state a retaliation claim under either Title VII or the FCRA.  (*See generally* Mot.; Reply).  According to Defendant, Plaintiff has not plausibly alleged that she engaged in statutorily protected activity during her second tenure with Defendant, Plaintiff's 2022 termination lacks a causal connection to any protected activity, and the Complaint constitutes an impermissible shotgun pleading.  (*See* Mot. 3–8; Reply 3–5).[1]  Plaintiff insists she alleges protected activity and a causal connection, and that Defendant improperly seeks to impose evidentiary burdens not required in a pleading.  (*See* Resp. 4–14).  The Court agrees with Plaintiff.

To state a retaliation claim under Title VII and the FCRA, a plaintiff must allege: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity.  *See McGuire v. Miami-Dade Cnty.*, 418 F. Supp. 2d 1354, 1358 (S.D. Fla. 2006) (quoting *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002)); *see also Fulford v. Miami-Dade Cnty.*, 219 F. Supp. 3d 1248, 1255 (S.D. Fla. 2016) (noting that state retaliation claims are analyzed under the same framework as federal retaliation claims (citation omitted)).  Defendant does not dispute that Plaintiff's February 28, 2022 termination qualifies as an adverse employment action; the parties' disagreement concerns the first and third elements.  (*See* Mot. 3–8; Reply 3–5).

#### A.  Protected Activity

Defendant first challenges whether Plaintiff has adequately alleged protected activity.  (*See* Mot. 3–4; Reply 3–4).  Title VII and the FCRA prohibit employers from retaliating against employees who either (1) have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" covered by the statutes (the "Participation Clauses");

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

or (2) have "opposed any practice" the statutes identify as unlawful employment practices (the "Opposition Clauses"). 42 U.S.C. § 2000e–3(a); Fla. Stat. § 760.10(7).

Plaintiff identifies three instances of protected activity: her December 2013 internal complaint to Human Resources; her 2014 EEOC charge and resulting conciliation agreement; and her December 2021 complaints to the City Attorney and Human Resources Director about Herrada. (*See* Resp. 5–8). Defendant attempts to discard the first two, contending the 2013 complaint and 2014 EEOC charge were resolved years earlier and are too remote to support a retaliation claim. (*See* Mot. 3–4). As for the 2021 complaints, Defendant claims they amount to nothing more than "speculative concerns" about possible future retaliation, insufficient to constitute protected opposition under Title VII or the FCRA. (*See id.*; *see also* Reply 3–4).

Whether Plaintiff has plausibly alleged protected activity is readily resolved. An EEOC charge squarely falls under the Participation Clause, as participation in an EEOC proceeding is statutorily protected. *See, e.g.*, *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 920 (11th Cir. 1993). Plaintiff filed such a charge in 2014, the EEOC found cause, and the parties entered into a conciliation agreement. (*See* Compl. ¶¶ 11–18). These allegations suffice to clear the protected-activity bar at the pleading stage.[2] Defendant's contention that the charge is too remote to support a retaliation claim goes not to whether it is protected activity, but to causation.

### B. Causal Connection

Defendant next argues that Plaintiff does not plausibly allege causation. (*See* Mot. 5–7; Reply 4–5). At the motion-to-dismiss stage, a plaintiff need not prove causation but must plead sufficient facts to make it plausible. *See, e.g.*, *Ellison v. City of Atlanta*, No. 23-cv-4067, 2024 WL 5701068, at *9 (N.D. Ga. Aug. 5, 2024) (citation omitted), *report and recommendation*

---

[2] Because the 2014 EEOC charge resolves the protected-activity element, the Court need not decide whether Plaintiff's December 2021 complaints also qualify as protected opposition.

*adopted*, No. 23-cv-4067, 2024 WL 5700934 (N.D. Ga. Sept. 9, 2024). Generally, "[t]o establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (alteration added; citation and quotation marks omitted). The Court construes this requirement broadly. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (citation omitted).

A plaintiff may demonstrate a causal link "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citation omitted). When no other facts suggest causation, the proximity must be "very close." *Id.* (citation and quotation marks omitted); *see also Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[Absent] other evidence of causation, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation." (alteration added; citation omitted)).

Defendant treats the 2014 EEOC charge as Plaintiff's last identifiable protected activity and emphasizes that nearly nine years transpired before her 2022 termination, which it contends is too remote to support causation.[3] (*See* Mot. 5; Reply 4–5). Plaintiff states that temporal distance alone does not foreclose an inference of causation. (*See* Resp. 9 (citations omitted)). Herrada, named in Plaintiff's 2014 EEOC charge, was rehired in December 2021; Plaintiff immediately raised concerns with the City Attorney and Human Resources about the risk of retaliation; and two months later Herrada directed her termination. (*See id.* 8–10).

Plaintiff's allegations are sufficient. Although close timing can establish an inference of causation, its absence does not defeat one where the surrounding facts — such as those presented

---

[3] Defendant's causation argument conveniently omits any discussion of Plaintiff's December 2021 complaints, which came just two months before her termination. (*See* Mot. 5–7; Reply 4–5).

here — plausibly indicate retaliatory intent. *See Hughes v. Wal-Mart Stores E., LP*, 846 F. App'x 854, 858 (11th Cir. 2021) (citation omitted); *see also Saintil v. Fla. Dep't of Corr.*, No. 24-cv-23570, 2025 WL 1330282, at *4 (S.D. Fla. May 7, 2025) ("[I]t does not follow that because closeness in time can prove causality that distance in time will bar causality — particularly at the pleading stage." (alteration added)). Consistent with that principle, courts have declined to dismiss retaliation claims despite lengthy gaps, where other allegations pointed to retaliatory motive. *See, e.g.*, *Matamoros v. Broward Sheriff's Off.*, No. 18-cv-62813, 2019 WL 4731931, at *4 (S.D. Fla. June 8, 2019) (reasoning that although a substantial delay may ultimately be fatal, dismissal at the pleading stage is premature where other facts suggest retaliation and discovery may reveal further evidence), *aff'd*, 2 F.4th 1329 (11th Cir. 2021). Plaintiff's allegations that Herrada directed her termination only two months after she raised renewed concerns to City officials provide ample grounds to infer causation. (*See* Compl. ¶¶ 23–28, 31–32).

### C. Shotgun Pleading

Defendant further asserts that the Complaint is an impermissible shotgun pleading. (*See* Mot. 7). The Court is not persuaded.

Shotgun pleadings are condemned because they obscure which facts support which claims and thus deny defendants fair notice. *See Weiland*, 792 F.3d at 1323. That is not the case here. The two counts are separately stated and are limited to a single theory of liability, supported by factual allegations that are tied to each claim. (*See* Compl. ¶¶ 35–47). The Complaint also specifically identifies Herrada as the official whose retaliatory bias influenced the termination decision and describes the circumstances of his role with sufficient detail to place Defendant on notice. (*See id.* ¶¶ 23–32, 39, 46). The Complaint more than clears the Rule 8 threshold, which requires only a "short and plain statement" giving Defendant fair notice of the claims.

## IV.  CONCLUSION

For these reasons, it is

**ORDERED AND ADJUDGED** that Defendant, City of Sweetwater's Motion to Dismiss Plaintiff's Complaint **[ECF No. 20]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 11th day of August, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record